IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MIGDALIA AMALBERT GARCIA,
GLADYS AMALBERT GARCIA,
NORMA AMALBERT GARCIA in
substitution of
EDNA GARCIA COLON and
JOSE AMALBERT FIGUEROA

Plaintiffs,

v.                                    CIVIL NO. 98-1478 (RLA)

KMART CORPORATION et al.,

Defendants.

## MINUTES AND ORDER OF PRETRIAL/SETTLEMENT CONFERENCE HELD ON AUGUST 8, 2000

The parties appeared before the undersigned in chambers for a Pretrial/Settlement Conference on August 8, 2000, from 10:30 a.m. to 12:30 p.m. Attorneys JOSE A. LEON LANDRAU and NOEMI LANDRAU RIVERA appeared on behalf of plaintiffs. MARCOS RAMIREZ, ESQ., and EDUARDO VERA, ESQ., represented defendant, KMART CORPORATION.

### Defendant's Request for Extension of Discovery Period and Continuance of Trial

The Court allowed KMART's argument on reconsideration of their request to have trial postponed while additional discovery is carried out related to plaintiff EDNA GARCIA's allegedly pre-existing medical conditions and to the alleged negligence of third parties who intervened with MS. GARCIA after her incident at KMART.

KMART argues that because the claim for MS. GARCIA's wrongful death was filed only a year ago in July, it has not had sufficient time to conduct the discovery needed to defend itself from such

claim, particularly MS. GARCIA's alleged previously existing medical conditions as well as the contributing or intervening negligence of doctors and hospitals that treated her after her alleged fall at the KMART store. It further argues that it was not until February of this year, when KMART's medical expert rendered his report, that it found out that plaintiff suffered from pre-existing health conditions that may have caused her death in December of 1998.

Plaintiffs on the other hand argue that KMART was made aware of MS. GARCIA's demise as far back as March of 1999, that the medical records for Centro Medico and Maimonides Medical Center in New York, including MS. GARCIA's death certificate, had been made available since September and November of 1999, respectively, and that, in any event, defendant was aware for over a year that it had to defend against a wrongful death claim as set forth in the Third Amended Complaint filed by plaintiffs in July of 1999. Plaintiffs assert that defendants could have queried MS. GARCIA's husband about her pre-existing health conditions regardless of her eventual fate, when they deposed him in November of 1999. They further aver that the issue of the medical malpractice allegedly suffered by MS. GARCIA at the hands of third-party physicians and/or hospitals came about due to a mere passing reference in the medical report prepared by defendant's expert.

Having heard the arguments of counsel, and after a thorough review of the record, the Court hereby finds as follows:

**CIVIL NO. 98-1478 (RLA)**                                                                 Page 3

---

1) An amended complaint including the wrongful death of MS. GARCIA as a claim in this action was filed in July 1, 1999;[1]

2) The Joint Initial Scheduling Conference Memorandum submitted by the parties on August 10, 1999 (docket No. 29) included a wrongful death claim for MS. GARCIA as part of the allegations of negligence set forth in Plaintiffs' Version of the Case;

3) Defendant consented to and filed together with plaintiffs an Amended Discovery Schedule which included date-specific discovery deadlines indicating that **discovery would be concluded by January, 2000.**[2]

4) Therefore, having had notice for over 7 months that plaintiffs were including a wrongful death claim, defendants acquiesced to concluding discovery proceedings by January of 2000. By this time defendant was also aware

---

[1] It should be noted that plaintiffs notified opposing counsel via Informative Motion and Request for Continuance of Scheduling Hearing filed with the Court as far back as March 25, 1999, that they had "**been informed of Edna Garcia's death on December 31, 1998, due to health conditions related to the accident object of this complaint**". See docket No. 19 (emphasis added). Indeed, defendant apparently knew of MS. GARCIA's death even as early as March 3, 1999, the date it filed its Answer to the Amended Complaint. See docket No. 18, at p.3.

[2] The parties submitted the amended discovery schedule at the Court's direction, issued as part of the Minutes of the Initial Scheduling Conference held on September 1, 1999. See docket No. 32.

**CIVIL NO. 98-1478 (RLA)**                                              Page 4

that the Court intended to hold the trial in March 16, 2000. Therefore, they cannot be heard now with arguments that the Court strapped them into discovery deadlines that were impossible to achieve.

Accordingly, KMART's Motion For Reconsideration is hereby DENIED.

However, upon further review the Court will set aside its Order imposing sanctions in the amount of $1,000.00 upon KMART and its counsel. Accordingly, the sanctions imposed in our Order of August 1, 2000 (docket No. 77) are hereby VACATED.

**TRIAL** remains scheduled for **August 15, 2000, at 9:30 a.m.**

### Defendant's Objections to Plaintiffs' Proposed Witness List

Plaintiffs' Informative Motion Announcing Fact Witness as Hostile Witness and/or Witness for Plaintiffs (**docket No. 82,** filed on August 7, 2000) was discussed. Defendant objects to plaintiffs using ARNALDO JOSUE GARCIA ZAYAS as a witness in their case in chief. Plaintiffs' response states that this witness cannot be deemed a surprise to defendant KMART since it had announced him as its witness in its portion of the Joint ISC memorandum filed in August of 1999 (docket No. 29).

At the conference, the parties were ordered to file contemporaneous briefs setting forth their arguments on this matter.

AO 72
(Rev 8/82)

Having reviewed the briefs,[3] the Court will allow plaintiffs to call MR. GARCIA ZAYAS as a witness in this case.

Defendant also objected to the inclusion of MS. GARCIA's three daughters as witnesses at trial. KMART argues that these three witnesses were not announced in plaintiffs' part of the Joint ISC Memorandum, and that, worse yet, answers to interrogatories were only received from two of these three witnesses very belatedly, namely February and April 2000, well after the conclusion of the discovery period. Plaintiffs argue that these witnesses should be allowed to testify because they have been parties to the case since July of 1999, when they substituted their mother, deceased plaintiff EDNA GARCIA, in the complaint.

Having considered the arguments presented, the Court will not permit plaintiffs to present the testimony of NORMA, MIGDALIA and GLADYS AMALBERT GARCIA.

Defendant's objections to the testimony of MILAGROS CRUZ VALENTIN were OVERRULED. MS. CRUZ shall be allowed to testify as to her observations on the date of the incident at KMART.

**Death Certificate**

---

[3] See Informative Motion filed by KMART on August 9, 2000 (docket No. 83), and Motion Regarding Fact Witnesses at Trial and Request for Exclusion of Documental Evidence (docket No. 84), filed by plaintiffs on August 10, 2000.

**CIVIL NO. 98-1478 (RLA)**                                              Page 6

---

Plaintiffs also request that defendants not be permitted to present the reverse side of MS. GARCIA's death certificate because it was produced by KMART after the discovery deadlines had expired.

The death certificate has two sides. Plaintiffs intend to use the front side of the certificate at trial. The rule of completeness, embodied in Rule 106 Fed. R. Civ. P. mandates that "[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require him at that time to introduce any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it".

Therefore, applying the standard of fairness required by the Rule, defendants shall be permitted to present the reverse side of the death certificate to the jury. See 21 Charles Alan Wright and Kenneth W. Graham, *Federal Practice and Procedure* § 5077 (1977).

IT IS SO ORDERED.

San Juan, Puerto Rico, this 15th day of August, 2000.

_____
RAYMOND L. ACOSTA
United States District Judge